**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8|5|2019

JEFFREY ROTHMAN,

      Plaintiff,

      -against-

THE CITY OF NEW YORK, ET AL.,

      Defendants.

No. 19 Civ. 0225 (CM)

## MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

McMahon, C.J.:

Plaintiff Jeffrey Rothman ("Plaintiff") brings this action under 42 U.S.C. § 1983 against The City of New York (the "City"), New York City Police Detective Andrew Wunsch ("Wunsch"), New York City Police Sergeant Vincent Flores ("Flores"), New York City Police Department Deputy Commissioner for Legal Matters Lawrence Byrne ("Byrne"), and New York City Police Commissioner James O'Neill ("O'Neill") (collectively, "Defendants"). The gravamen of Plaintiff's Complaint, (Dkt. 9), is that when Plaintiff was attempting to serve process at the New York City Police Department ("NYPD") headquarters, two police officers – Wunsch and Flores – expressed their displeasure towards Plaintiff for suing the NYPD – one by angrily grabbing Plaintiff's pen from his hand and the other by angrily throwing Plaintiff's papers at him. Plaintiff's pen was returned within minutes; he was then told to leave the building and promptly left. Plaintiff was able to glean the officers' names and shield numbers before he left and filed complaints with the NYPD and the Civilian Complaint Review Board ("CCRB").

The CCRB recommended that the NYPD discipline one of the officers for his discourteous behavior by issuing a command level instruction.

Out of this, Plaintiff and his attorney have fashioned a nine-count complaint alleging violations of the United States Constitution, the New York State Constitution, and New York State common law torts. Through this complaint, Plaintiff also sues Police Commissioner, James O'Neill – apparently on the grounds that Plaintiff was not kept apprised of the progress of his complaints – and Deputy Commissioner for Legal Matters, Lawrence Byrne – on the grounds that Byrne oversaw and approved of the actions of Wunsch and Flores.

Defendants move to dismiss the Complaint – for the most part meritoriously – pursuant to Fed. R. Civ. P. 12(b)(6) on the grounds that (1) Plaintiff fails to plead facts sufficient to plausibly infer that Defendants Wunsch or Flores violated Plaintiff's constitutional rights; (2) Defendants are entitled to qualified immunity; (3) Byrne and O'Neill lacked personal involvement in the alleged conduct; (4) Plaintiff fails to plead facts sufficient to plausibly infer the existence of an unconstitutional municipal policy or custom; (5) Plaintiff lacks standing to pursue declaratory or injunctive relief; (6) the alleged state law claims fail as a matter of law; and (7) the Court should decline to exercise jurisdiction over the alleged state law claims because there is no viable federal claim against any defendant.

Not much is left of the complaint after this Opinion. Given the value of the case, and consistent with Fed. R. Civ. P. 1, the Court has entered a scheduling order that will ensure the just, speedy, and inexpensive resolution of this case.

I.     **Factual Background**

Unless otherwise noted, the facts are taken from Plaintiff's Complaint. For the purposes of the instant motion, the Court accepts the alleged facts as true.

## A. The Incident

This action arises out of an incident between Plaintiff and NYPD officers that occurred on the afternoon of December 13, 2017, at the reception desk in the lobby of One Police Plaza in New York City, when Plaintiff was attempting to serve process in the building.

Plaintiff is a solo practitioner in New York City; he specializes in civil rights litigation. (Compl. ¶¶ 17–18.) Due to the nature of Plaintiff's job, he was familiar with the "policies and procedures with respect to the service of Summonses and Complaints" at One Police Plaza. (*Id.* ¶ 34.)

At approximately 4:40 P.M. on December 13, 2017, Plaintiff arrived at One Police Plaza, went through security, and proceeded to the reception desk in the lobby of the building. (*Id.* ¶¶ 28–30.) At the reception desk, Plaintiff encountered Wunsch, who was the officer assigned to the desk. (*Id.* ¶ 31.) Plaintiff informed Wunsch that he was there to serve legal papers. (*Id.* ¶ 32.) Wunsch then informed Plaintiff that he should not have been allowed to pass through security because, due to a recent policy change, service of process at One Police Plaza should be made at the FOIL Unit, which had closed at 4:00 P.M. (*Id.* ¶ 33.)

Notwithstanding the new policy, Plaintiff requested a pass or an escort to go to the Manhattan Court Section Unit in Room # S-139, as he had done many times in the past without incident. (*Id.* ¶¶ 34–35.) Wunsch denied this request. (*Id.* ¶ 36.) To effectuate service, Plaintiff told Wunch that he would leave the papers with him at the reception desk. (*Id.* ¶ 37.) Plaintiff then looked at Wunsch's nameplate and began to write down Wunsch's name and shield number for the purposes of preparing an Affidavit of Service. (*See id.* ¶¶ 39–40.) Wunsch "angrily directed" Plaintiff to stop writing down his name and proceeded to "aggressively . . . [and] violently" grab Plaintiff's pen out of his hand. (*Id.* ¶ 40.) Wunsch returned the pen after multiple requests by Plaintiff that he do so. (*Id.* ¶¶ 44–45.)

3

Wunsch then told Plaintiff that he had called for his Sergeant to come to the desk. (*Id.* ¶ 43.) Flores appeared and reiterated that Plaintiff would not be allowed entry to make service at the Manhattan Court Section Unit. (*Id.* ¶¶ 46–47.) Plaintiff told Flores that Wunsch had grabbed his pen out of his hand. (*Id.* ¶ 48.) Plaintiff then gave Flores his business card, and told Flores that he would leave the papers with him to effect service. (*Id.* ¶ 49.) At this point, Flores became angry. (*Id.* ¶ 50.) He picked up the documents from the desk and "aggressively . . . [and] violently" threw them at Plaintiff, striking him and causing the papers to fall on the floor. (*Id.*) After throwing the papers, Flores directed Plaintiff to leave the building. (*Id.* ¶ 51.) Plaintiff complied, leaving the Summons and Complaint on the floor. (*Id.* ¶ 52.) As Plaintiff was leaving, Wunch walked beside him until he left the building. (*Id.*)

## B.   The Complaints to the CCRB and NYPD

On December 28, 2017, Plaintiff wrote a letter to the NYPD Deputy Commissioner for Legal Matters, Lawrence Byrne and the Corporation Counsel of the City of New York, Zachary Carter, asking that (1) the City discipline Wunsch and Flores for their conduct during the incident at One Police Plaza, (2) Plaintiff be informed of what disciplinary actions resulted, and (3) the City preserve all evidence relating to the incident. (*Id.* ¶¶ 53–54.) Additionally, in early January 2018, Plaintiff filed a complaint with the CCRB seeking to have Wunsch and Flores disciplined for their conduct during the incident at One Police Plaza. (*Id.* ¶ 55.)

On April 24, 2018, Plaintiff received a telephone call from NYPD Sergeant Swetsky ("Swetsky"). (*Id.* ¶ 56.) Swetsky informed Plaintiff that he had spoken with Wunch about the incident but that no wrongdoing had occurred due to the fact that Plaintiff was able to write down Wunsch's name and shield number even though Wunsch failed to provide Plaintiff with this information. (*Id.* ¶¶ 56–57.) Swetsky also told Plaintiff that his allegations that Wunsch

"wrench[ed]" the pen from Plaintiff's hand and that Flores threw Plaintiff's papers at him would need to be investigated by the CCRB, and that neither the City nor the NYPD would investigate those allegations "independent of the [CCRB]." (*Id.* ¶ 58.) Plaintiff "believes" that Swetsky was acting on behalf of Byrne, and that Byrne sanctioned the conduct of Wunsch and Flores. (*Id.* ¶ 60.)

On August 1, 2018, the CCRB informed Plaintiff that it had investigated his complaint and concluded that Wunsch acted "discourteously toward Jeffrey Rothman." (*Id.* ¶¶ 61, 63.) The CCRB recommended "discipline in the form of a command level instruction." (*Id.* ¶ 63.) The CCRB also found that Plaintiff's abuse of authority claim against Wunch and discourteousness claim against Flores were "unsubstantiated." (*Id.* ¶ 66.) Plaintiff asserts that "what an 'unsubstantiated' finding connotes is that, because there is a credibility assessment factor which the [CCRB] determines cannot be resolved, the [CCRB], in effect, is passing on a substantive finding with respect to the charge against the officer[s]." (*Id.* ¶ 68.)

The CCRB forwarded its findings and recommendations to O'Neill and Byrne. (*Id.* ¶ 64.) Plaintiff believes that Byrne and O'Neill "have the authority to adopt the referral from the [CCRB] (both as to the substantive finding and the recommended discipline); or they have the discretion to modify the same or disregard the same altogether." (*Id.* ¶ 65.) To date, Plaintiff has not been provided with any information about the status of any disciplinary action that either has or has not been taken. (*Id.* ¶ 70.)

## II. These Proceedings

The First Cause of Action alleges that Wunsch unreasonably seized Plaintiff's property, and violated his rights under the Fourth Amendment and 42 U.S.C. § 1983.

The Second Cause of Action alleges that Wunsch unreasonably seized Plaintiff's property, violating his rights under the laws and Constitution of New York.

The Third Cause of Action alleges that Wunsch and Flores subjected Plaintiff to unreasonable force and detention/restraint, violating Plaintiff's rights under the Fourth and Fourteenth Amendments and § 1983.

The Fourth Cause of Action alleges that Wunsch and Flores subjected Plaintiff to unreasonable force and detention/restraint, violating Plaintiff's rights under the laws and Constitution of New York.

The Fifth Cause of Action alleges that Byrne sanctioned Wunsch's and Flores's conduct, violating Plaintiff's rights under the Fourth and Fourteenth Amendments and § 1983.

The Sixth Cause of Action alleges that the O'Neill, Byrne, and the City violated Plaintiff's rights under the First Amendment and § 1983.

The Seventh Cause of Action alleges that the O'Neill, Byrne, and the City violated Plaintiff's rights under the First Amendment and § 1983.

The Eighth Cause of Action alleges that the City is liable for the state law claims, pursuant to the doctrine of *respondeat superior*.

The Ninth Cause of Action alleges that the City is liable for the § 1983 claims, pursuant the doctrine of *respondeat superior*.

## III. Discussion

### A. Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of a complaint that fails to state a claim upon which relief may be granted. The causes of action alleged in a complaint state a claim so long as they contain "sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The issue is simply whether the facts the plaintiff alleges, if true, are plausibly sufficient to state a legal claim." *Doe v. Columbia Univ.*, 831 F.3d 46, 48 (2d Cir. 2016).

The court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in the plaintiff's favor. *See id.* at 59. However, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) (internal alterations omitted) (internal quotation marks omitted).

In addition to the complaint, the Court may consider documents that are attached as exhibits, incorporated by reference, or are otherwise integral to the allegations contained therein so long as there is no dispute as to the authenticity or accuracy of the document. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

### B. Federal Claims

Section 1983 creates a "species of tort liability" for State actors that deprive someone of "rights, privileges, or immunities secured by the Constitution." *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 916 (2017). In order to state a claim under Section 1983, Plaintiff must allege that Defendants "were state actors or were acting under color of state law at the time of the alleged wrongful action" and that "the action deprived plaintiff of a right secured by the Constitution or federal law." *Hirsch v. City of New York*, 300 F. Supp. 3d 501, 508 (S.D.N.Y. 2018) (citing *Am. Mfrs. Mut. Ins. v. Sullivan*, 526 U.S. 40, 49–50 (1999)). It is important to note that Section 1983

provides only a *mechanism* for enforcing individual rights secured by the Constitution and laws of the United States and is not an independent source of rights. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002); *Alberti v. County of Nassau*, 393 F. Supp. 2d 151, 161 (E.D.N.Y. 2005).

Here, Plaintiff's federal claims arise under the First, Fourth, and Fourteenth Amendments to the United States Constitution. (*See* Compl.) The claims arising under the First and Fourth Amendments are made applicable to State actors through incorporation under the Fourteenth Amendment. *See Ker v. California*, 374 U.S. 23, 30 (1983) (holding that the Fourth Amendment is binding against the States through incorporation under the Fourteenth Amendment); *Cooper v. U.S. Postal Serv.*, 577 F.3d 479, 491 (2d Cir. 2009) (holding that the Fourteenth Amendment incorporates the First Amendment).

### 1. The Motion to Dismiss the First Cause of Action (Unlawful Seizure of Plaintiff's Property in Violation of the Fourth Amendment) is Denied

In the First Cause of Action, Plaintiff asserts that his property – specifically, his pen -- was unlawfully seized in violation of the Fourth Amendment to the United States Constitution. (*See* Compl. ¶78.) Plaintiff alleges that, when he began to write down Wunsch's name and shield number, for the purpose of preparing an Affidavit of Service, "Wunsch angrily directed the Plaintiff to stop writing his name down and . . . abrasively . . . [and] violently grabbed the Plaintiff's pen and wrenched it out of Plaintiff's hand." (*Id.* ¶¶ 39–40.)

The Fourth Amendment states that "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV. The Fourth Amendment's "proper function is to constrain . . . against intrusions which are not justified in the circumstances, or which are made in an improper manner." *Winston v. Lee*, 470 U.S. 753, 760 (1985) (internal quotation marks omitted) (quoting *Schmerber v. California*, 384 U.S. 757, 768 (1966)). In order to determine whether Wunsch's

8

alleged actions in taking Plaintiff's pen could plausibly constitute a Fourth Amendment violation, the Court must find that (1) Plaintiff has plausibly alleged that the taking of his pen was indeed a "seizure" as defined by the Fourth Amendment, and (2) that the seizure was unreasonable. The Court will address each prong in turn.

### a) Plaintiff's Pen Was Seized

"A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property" resulting from a "governmental action." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). A seizure is complete once the taking of the property is complete, so it is of no moment how long the seized property is retained by the person after he took it. *See id.* Once the property has been taken away from someone, it has been "seized." *See Peterec v. Hilliard*, No. 12-CV-3944 (CS), 2013 WL 5178328, at *5 (S.D.N.Y. Sept. 16, 2013) (citing *Jacobsen*, 466 U.S. at 113); *see also Mallard v. Potenza*, No. 94-CV-223 (CBA), 2007 WL 4198246 at *5 (E.D.N.Y. Nov. 21, 2007) (internal quotation marks omitted) ("[T]he Fourth Amendment protects an individual's interests in retaining possession of property but not the interest in regaining possession of property.").

Here, the interest that must not be meaningfully interfered with is the possessory interest in the pen itself – an interest distinct from Plaintiff's secondary interest in using the pen to write down Wunsch's name and shield number. The fact that a pen is not a valuable item or may be considered insignificant is of no relevance here. The possessory interest need not be meaningful – only the interference with that interest.

The alleged seizure in question in the case at bar is similar to the one that occurred in *Gennusa v. Canova*, 748 F.3d 1103 (11th Cir. 2014). In *Gennusa*, a domestic violence suspect and his counsel were at a police station for a non-custodial interview when the suspect wrote a

statement on a piece of paper. His lawyer, the plaintiff in the action, declined to turn the paper over to the police when an officer demanded it. *Id.* at 1108. When the officer proceeded to "forcibly grab[] the statement" from the plaintiff's hand, he "meaningfully interfered" with the plaintiff's possessory interest in the statement . *See id.* at 1108, 1114 (citing *Soldal v. Cook Cty., Ill.*, 506 U.S. 56, 61 (1992)). Plaintiff alleges similar facts here – that a police officer grabbed a personal item out of his hand without his consent. It is of no consequence that Wunsch allegedly returned the pen shortly after first taking it, because the seizure was already complete once the pen was taken in the first instance. *See Peterec*, 2013 WL 5178328, at *5.

For this reason, Plaintiff has adequately stated a claim that his pen was in fact seized by Wunsch. Whether that seizure violated Plaintiff's Fourth Amendment rights turns on whether the seizure could possibly be deemed reasonable.

It cannot be.

### b)    Plaintiff Pleads Facts From Which a Trier of Fact Could Conclude That the Seizure Was Unreasonable

"[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness.'" *Riley v. California*, 573 U.S. 373, 381 (2014) (internal quotation marks omitted) (quoting *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006)). Ordinarily, seizures of personal property are unreasonable under the Fourth Amendment unless they are carried out "'pursuant to a judicial warrant,' issued by a neutral and detached magistrate after finding probable cause." *Illinois v. McArthur*, 531 U.S. 326, 330 (2001) (quoting *United States v. Place*, 462 U.S. 696, 701 (1983)). However, "There are recognized exceptions under which warrantless seizures will be considered 'reasonable.'" *Harrell v. City of New York*, 138 F. Supp. 3d 479, 488 (S.D.N.Y. 2015). In *Illinois v. McArthur*, the Supreme Court lists some examples of exceptions to the warrant requirement and includes: temporary seizures to preserve evidence until a warrant can be

obtained, suspicionless stops at drunk driver checkpoints, temporary seizure of luggage based on

reasonable suspicion, temporary detention of suspects to prevent flight and protect officers while

executing a search warrant, and temporary stops based on reasonable suspicion. *Id.* at 330–31.

Ultimately, "to determine whether a seizure is unreasonable, a court must 'balance the

nature and quality of the intrusion on the individual's Fourth Amendment interests against the

importance of the governmental interest alleged to justify the intrusion' and determine whether

'the totality of the circumstances justified the particular sort of . . . seizure.'" *Carroll v. City of

Monroe*, 712 F.3d 649, 651 (2d Cir. 2013) (internal alterations omitted) (quoting *Tennessee v.

Garner*, 471 U.S. 1, 8–9 (1985)).

Plaintiff alleges that there was "no legitimate law enforcement justification" for the

seizure. (Compl. ¶ 41.) While that ends the matter – on a motion to dismiss I must accept the

assertion as true (it is certainly well pleaded) – Defendants do not suggest a justification in

support of their Motion to Dismiss (*see* Defs.' Mem. Supp.). Since, if the facts alleged are true

(as I must presently assume), there was in fact no legitimate governmental interest in seizing the

pen, it means there is no counterweight in the *Carroll* analysis to the intrusion in Plaintiff's

possessory interest in his pen. The facts pleaded admit of the conclusion that Wunsch did not

take kindly to Plaintiff's attempt to write down his identifying information and took the pen to

try to stop Plaintiff from recording who he was. But Plaintiff had every right to record Wunsch's

name and shield number. Thus, Plaintiff adequately alleges that the seizure of his pen was

unreasonable.

### c) Wunsch Is Not Entitled to Qualified Immunity

As to each and every federal claim, Defendants argue that the two police officers are

entitled to qualified immunity. (Defs.' Mem. Supp. at 9–11.) Because Plaintiff states a claim

against Wunsch arising out the seizure of his pen, the court must consider whether to dismiss that claim at the pleading stage on the ground of qualified immunity.

I will not do so.

"Police officers are immune from liability for money damages in suits brought against them in their individual capacities if 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Brandon v. City of New York*, 705 F. Supp. 2d 261, 270 (S.D.N.Y. 2010) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "The qualified immunity doctrine protects government officials from suits seeking to impose personal liability for money damages based on unsettled rights or on conduct that was not objectively unreasonable." *Tenenbaum v. Williams*, 193 F.3d 581, 595–96 (2d Cir. 1999) (internal quotation marks omitted). Therefore, courts should ask (1) whether the officer's conduct violates "clearly established constitutional rights" and, if so, (2) whether it was "objectively reasonable for them to believe their acts did not violate those rights." *See Weyant v. Okst*, 101 F.3d 845, 857 (2d Cir. 1996). "A police officer's actions are objectively unreasonable, and therefore are not entitled to immunity, when 'no officer of reasonable competence could have made the same choice in similar circumstances.'" *Brandon*, 705 F. Supp. 2d at 271 (internal quotation marks omitted) (quoting *Anthony v. City of New York*, 339 F.3d 129, 138 (2d Cir. 2003)).

Drawing all reasonable inferences in Plaintiff's favor, Wunsch was angry that Plaintiff was writing down his name and shield number and responded by grabbing Plaintiff's pen out of his hand. (*See* Compl. ¶¶ 39–40.) After Plaintiff repeatedly asked for his pen to be returned, Wunsch complied and returned the pen. (*Id.* at 44–45.) It is clearly established that Plaintiff had a constitutional right to keep his pen absent any law enforcement need that would deem it

reasonable to seize the pen. Assuming (as I must, on a motion to dismiss) that there was no legitimate law enforcement need to take the pen, it would be clear to a reasonable officer that he had no right to seize the pen. An officer of reasonable competence would not allow his or her frustration over a non-threatening disagreement about the proper procedure for service of process at One Police Plaza to overcome his or her judgment and training, resulting in a constitutional violation.

For the foregoing reasons, Plaintiff has stated a claim for an unconstitutional seizure in violation of his Fourth Amendment rights.

### 2. The Motion to Dismiss the Third Cause of Action (Unreasonable Detention/Excessive Force) is Granted

In the Third Cause of Action, Plaintiff alleges that the two officer Defendants used excessive force against his person and unreasonably detained him, in violation of the Fourth and Fourteenth Amendments. (*See* Compl. ¶ 84.) He fails to state a claim under either theory.

Plaintiff claims that he was subject to "unnecessary and . . . unreasonable . . . detention/restraint" by Wunsch and Flores when he was leaving One Police Plaza. (*Id.* ¶ 84.) Plaintiff's "detention/restraint" (i.e., unlawful seizure of the person) claim is limited to "his removal from the One Police Plaza building lobby." (*Id.*)

Plaintiff also claims that Flores and Wunsch subjected him to "unnecessary and . . . unreasonable force . . . in violation of the Plaintiff's rights as guaranteed to him under the Fourth and/or Fourteenth Amendments to the United States Constitution . . . ." (*Id.* ¶ 84.) This claim stems from Flores' allegedly "aggressively . . . [and] violently" throwing Plaintiff's papers at

him" (*id.* ¶ 50) and Wunsch's "aggressively . . . [and] violently" "grabb[ing]" Plaintiff's pen and "wrench[ing]" it out of his hand (*id.* ¶ 40.)[1]

### a) Plaintiff Pleads No Viable Fourth Amendment Personal Seizure Claim

A claim for unlawful detention sounds in the Fourth Amendment's prohibition on unreasonable seizures. *See Posr v. Doherty*, 944 F.2d 91, 98 (2d Cir. 1991). But for a seizure to be unreasonable under the Fourth Amendment, there must be a seizure begin with. Here there is none.

"[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). But if "a reasonable person would feel free 'to disregard the police and go about his business,' the encounter is consensual" and it "will not trigger Fourth Amendment scrutiny unless it loses its consensual nature." *Florida v. Bostick*, 501 U.S. 429, 434 (1991) (internal citations omitted). The Supreme Court has clarified that "*Mendenhall*'s rule of a seizure occurring 'only if' a reasonable person would feel restrained by a police order 'states a *necessary*, but not a *sufficient*, condition for seizure.'" *United States v. Swindle*, 407 F.3d 562, 572 (2d Cir. 2005) (quoting *California v. Hodari D.*, 499 U.S. 621, 628 (1991)). A police encounter loses its consensual nature, resulting in a Fourth Amendment seizure, "[o]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen . . . ." *Terry v. Ohio*, 393 U.S. 1, 19 n.16 (1968).

---

[1]      The seizure of the pen from Plaintiff is dealt with in the First Cause of Action; in this cause of action, Plaintiff contends that the grabbing of the pen constituted excessive force.

Where a plaintiff has not claimed that physical force was used, but instead claims that a show of authority restricted his liberty, the question of how to determine whether the plaintiff has been seized often arises. The Fourth Amendment is not implicated "merely because one of the persons involved is a police officer." *United States v. Singleton*, 608 F. Supp. 2d 397, 401–02 (W.D.N.Y. 2009) (citing *Florida v. Royer*, 460 U.S. 491, 497 (1983)). "[L]aw enforcement officers do not violate the Fourth Amendment" by merely approaching and questioning an individual. *Brown v. City of Oneonta, N.Y.*, 221 F.3d 329, 340 (2d Cir. 2000). Where physical force is absent, there must be "*submission* to the assertion of authority." *Swindle*, 407 F.3d at 572 (internal quotation marks omitted) (quoting *Hodari D.*, 499 U.S. at 626). It is not enough for a plaintiff to merely feel restrained in order for there to have been a seizure. *See id.* Factors to consider in determining whether or not there was a show of authority include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *United States v. Serrano*, 695 F. App'x 20, 22 (2d Cir. 2017) (internal quotation marks omitted) (quoting *Mendenhall*, 446 U.S. at 554).

Plaintiff does not plead facts tending to show that Wunsch either restrained him or forced his submission to authority. Plaintiff does not argue that Wunsch touched his person at any point. Rather, Plaintiff claims that "Wunsch unnecessarily walked with the Plaintiff as the Plaintiff was complying with . . . Flores'[s] directive" to leave the building. (Compl. ¶ 52.)

Plaintiff describes Wunsch's walking next to him as a "custodial detention/restraint of the Plaintiff as the Plaintiff's liberty/freedom of movement was being unnecessarily and unreasonably constrained." (*Id.*) This, with respect, is nonsense. Plaintiff does not argue that Flores "removed" him from One Police Plaza by seizing his person. (Plaintiff's Memorandum in

Opposition to Party Defendants' Rule 12(b)(6) Motion to Dismiss, Dkt. 32 ("Pl. Mem. Opp.")).

Aside from his wholly conclusory (and therefore irrelevant) assertion that Wunsch's escorting

him out the door was "unnecessary," Plaintiff does not plead any restraint or "show of

authority," by Wunsch. There was only one officer walking beside Plaintiff. Plaintiff does not

allege that Wunsch displayed his weapon, touched him, or said anything to him as he was

walking beside Plaintiff. No reasonable person would have felt "restrained" by Wunsch's

walking beside him.

Nor has Plaintiff pleaded that Wunsch seized his person when he took the pen out of

Plaintiff's hand. Indeed, according to Plaintiff (who is a lawyer, and who knows how to plead an

excessive force claim), Wunsch grabbed only the pen, not Plaintiff himself. This differentiates

the case from *West v. Davis*, 767 F. 3d 1063, 1066 (11th Cir. 2014) – a case in which an officer

grabbed plaintiff's wrist in order to obtain his pen, thereby resulting in the seizure of his person,

rather than seizure of property.

.           Plaintiff's Third Cause of Action suggests that Flores also subjected him to "unnecessary

. . . and . . . unreasonable . . . detention/restraint . . . with respect to his removal from One Police

Plaza." (Compl. ¶ 84.) Detention occurs when a reasonable person would not have felt "free to

go." Plaintiff alleges, in sum and substance, that Flores (1) refused to allow Plaintiff to enter the

building, (2) told Plaintiff to leave the premises, and (3) threw the papers Plaintiff was there to

serve at Plaintiff. (*See* Compl. ¶¶ 47, 50, 51.) Put otherwise, Flores did no more than direct

Plaintiff to leave; and Plaintiff concedes that "he was voluntarily complying with the direction

given to him by Flores to leave." (Pl. Mem. Opp. at 13.) Not only is it clear that a reasonable

person would have felt free to leave, but Plaintiff actually acknowledged that he was free to

leave – and was in fact leaving. Plaintiff may not have been free to stay, but that does not mean that he was not "free to go," which is the hallmark of restraint.

Accordingly, Plaintiff has failed to state a claim for an unconstitutional seizure of his person in violation of the Fourth Amendment.

**b)**      **Plaintiff Pleads No Viable Excessive Use of Force Claim Either Under the Fourth or Fourteenth Amendments**

**(1)**      **Plaintiff Can Only Raise His Excessive Force Claim Under the Fourteenth Amendment**

*Graham v. Conner*, 490 U.S 386 (1989) sets out the "exclusive framework for analyzing whether the force used in making a seizure complies with the Fourth Amendment." *County of Los Angeles, Calif. v. Mendez*, 137 S. Ct. 1539, 1546 (2017). *Graham* held that claims alleging that "law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard" rather than under the Fourteenth Amendment's substantive due process doctrine. *Id.* at 395. However, the Fourth Amendment reasonableness standard laid out in *Graham* was applied only to "excessive force in the course of making an arrest, investigatory stop, or other 'seizure' *of* [*a*] *person*." *Graham*, 490 U.S. at 387 (emphasis added).

Outside the context of an arrest or other seizure of the person, the Second Circuit has held, post *Graham*, that "a plaintiff may make claims of excessive force under § 1983 under the Due Process Clause of the Fourteenth Amendment" in certain circumstances. *Hemphill v. Schott*, 141 F.3d 412, 418 (2d Cir. 1998). Specifically, the Second Circuit concluded that reading *Graham* to suggest "that those relatively unusual excessive force cases falling beyond the ambit of the Fourth and Eighth Amendments are redressable only by recourse to state tort

law" is incorrect, and that "in the non-seizure, non-prisoner context, the substantive due process right to be free from excessive force is alive and well." *Rodriguez v. Phillips*, 66 F.3d 470, 477 (2d Cir. 1995). This interpretation by the Second Circuit is alive and well today. *See, e.g., Edrei v. Maguire*, 892 F.3d 525, 533 (2d Cir. 2018) ("The right not to be subject to excessive force, perhaps most commonly associated with the Fourth and Eighth Amendments, can also arise under the Fourteenth.").

Because Plaintiff was not "seized," *see supra* pp. 14–17, his excessive force claim must be brought and analyzed under the substantive due process doctrine of the Fourteenth Amendment.

### (2)    Plaintiff Fails to State a Fourteenth Amendment Excessive Force Claim

"Historically, the test for excessive force under the Fourteenth Amendment was whether the use of such force 'shocks the conscience.'" *Abujayyab v. City of New York*, No. 15 Civ. 10080 (NRB), 2018 WL 3978122, at *5 (S.D.N.Y. Aug. 20, 2018). The Supreme Court created the "shocks the conscience" test in *Rochin v. California*, 342 U.S. 165 (1952), when the Court held that an officer's actions of forcing the extraction of morphine capsules from the plaintiff's stomach contents by ordering a physician to force an emetic solution through a tube into the plaintiff's stomach to induce vomiting "shocks the conscience." *Id.* at 172. Under the original formulation, in order to "shock the conscience," the force in question must do "more than offend some fastidious squeamishness." *See id.* Even if a police officer's use of force constitutes a civil assault or battery, it may not "shock the conscience" such that it rises to the level of a constitutional violation. *See Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973). "[C]onduct intended to injure in some way unjustifiable by any government interest is the sort of action most likely to rise to the conscience-shocking level." *County of Sacramento v. Lewis*, 523 U.S. 833,

849 (1998). However, neither permanent nor severe injuries are required to shock the conscience. *See Robison v. Via*, 821 F.2d 913, 924 (2d. Cir. 1987).

In *Edrei v. Maguire*, 892 F.3d 525 (2d Cir. 2018), the Second Circuit held that in order to "shock the conscience," the force used must be an "objectively unreasonable degree of force" as defined in *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015). *Edrei*, 892 F.3d at 536. The court in *Edrei* held that "purposeful, knowing or (perhaps) reckless action that uses an objectively unreasonable degree of force *is* conscience shocking." *Id.* Under the test outlined in *Edrei* and *Kingsley*, the following factors are analyzed to determine whether a use of force was objectively unreasonable:

> (1) the need for force, including the threat reasonably perceived by the officer and whether the plaintiff was actively resisting, (2) the relationship between the need and the degree of force used, (3) the extent of the plaintiff's injury, and (4) any effort made by the officer to temper or to limit the amount of force.

*Abujayyab*, 2018 WL 3978122, at *6 (citing *Kingsley*, 135 S. Ct. at 2473; *Edrei*, 892 F.3d at 537–38). While malicious intent is not required for a showing of excessive force, it is a condition "that *might* help show that the use of force was excessive." *Edrei*, 892 F.3d at 537 (emphasis in original) (internal quotation marks omitted).

*Kingsley* was a case about excessive force used against a pretrial detainee, but the Second Circuit held that *Kingsley* also applied to force used against persons who were not detainees. *See Edrei*, 892 F.3d at 535–36. *Kingsley* holds that "objective reasonableness turns on the 'facts and circumstances of each particular case'" and that "[a] court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Kingsley*, 135 S. Ct. at 2473 (quoting *Graham*, 490 U.S. at 396).

Here, the force allegedly used by Wunsch and Flores does not rise to the level required to sustain a constitutional violation. The alleged conduct, while perhaps unbecoming an NYPD officer, was not even "force" – let alone force that was "objectively unreasonable" and "shocking" to the conscience.

Drawing all inferences in the plaintiff's favor, the need for force by both Wunsch and Flores was minimal. Plaintiff was not acting in an unruly, threatening, or violent manner. Although Plaintiff's refusal to abide by the alleged new procedure for serving process at One Police Plaza may have annoyed the officers at the reception desk, there is nothing to suggest that that, absent the use of force, there would have been an imminent threat to security.

Second, while any threat perceived by the officers on the scene was minimal, so too was the so-called force actually used. Throwing papers at someone is not using force – period. Grabbing a pen out of someone's hand comes closer, but it does not rise to the level of physical force that was deemed actionable in *Abujayyab* (a punch in the face) or in *Edrei* (an LRAD capable of causing serious physical injury). Grabbing a pen is unlikely to cause serious physical injury – especially where, as here, no touching of Plaintiff's person is alleged.

Third, the fact that Plaintiff suffered no injury weighs heavily against a finding of excessive force. In *Stora v. City of New York*, No. 16-CV-4541 (ERK), 2019 WL 1746955 (E.D.N.Y. Apr. 18, 2019), while the force alleged involved a punch to the face – a higher degree of force than is involved in the case at bar – the absence of a measurable injury weighed heavily in the court's finding that there was no excessive force. *Id.* at *6–7. Plaintiff does not allege that he suffered any physical injury due to the force used by either Wunsch or Flores.

Finally, the low level of force applied suggests a tempered response from the officers. Drawing all reasonable inferences in Plaintiff's favor, it cannot be assumed that the officer

would expect Plaintiff to suffer any harm as a result of the force applied. In other words, the alleged use of force could not have been applied for the purpose of causing harm to the Plaintiff, because if that had been their goal, the officers would have used more force than they did. Although lack of malicious intent is not in itself determinative, *see Edrei*, 892 F.3d at 537, it suggests a tempered response from Wunsch and Flores.

The factors outlined in *Kingsley* and *Edrei*, as applied to this case, yield a finding that Plaintiff has failed to allege facts sufficient to state a claim for excessive use of force under the Fourteenth Amendment. The "force" alleged simply does not rise to the rather low level needed to implicate the Constitution.

### 3. The Motion to Dismiss the Sixth and Seventh Causes of Action is Granted

In the Sixth and Seventh Causes of Action, Plaintiff seeks to recover for violations of the First Amendment and Fourteenth Amendment under the theories that Plaintiff has a First Amendment right and a Fourteenth Amendment property right to know what discipline measures the NYPD took with respect to Wunsch and Flores. (*See* Compl. ¶¶ 95, 99.) This is nonsense.

### a) Plaintiff Pleads No Viable First Amendment Claim

The First Amendment states that "Congress shall make no law . . . abridging . . . the right of the people . . . to petition the government for a redress of grievances." U.S. Const. amend. I. The Fourteenth Amendment states that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. Plaintiff claims that his First Amendment right to petition the government for a redress of grievances and his Fourteenth Amendment right to not be denied property without due process of law were violated because he did not receive information about any disciplinary actions that may have stemmed from his letter to Byrne and O'Neill and the complaint he filed with the CCRB. Plaintiff asserts that he:

has a right to know under both the First and Fourteenth Amendments to the
United States Constitution what the outcome of his Petition/Complaint to
government is as it relates to the rights violating conduct of the government's
agents and employees directed at him; and whether its agents and employees will
suffer discipline for their conduct; and the Plaintiff has an objective expectation
that, where there is a finding against a police officer for the officer's conduct, the
Plaintiff will be informed, as part of the process he has triggered to obtain
discipline, the outcome of the process.

(Compl. ¶ 71.)

It is well settled that "nothing in the First Amendment . . . suggests that the rights to

speak, associate, and petition require government policymakers to listen or respond to

individuals' communications." *Ladeairous v. Attorney General of N.Y.*, 592 F. App'x 47, 48 (2d

Cir. 2015) (summary order) (internal alterations omitted) (internal quotation marks omitted)

(quoting *Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984)).

Plaintiff wrote a letter to Lawrence Byrne and Zachary Carter on December 28, 2017,

asking that the City discipline Wunsch and Flores. (Compl. ¶ 53.) Plaintiff also filed a

complaint with the CCRB in early January 2018, seeking to have Wunsch and Flores disciplined.

(*Id.* ¶ 55.) His First Amendment right to petition was in no way impeded; the First Amendment

did not guarantee him any particular result.

Neither does the First Amendment guarantee Plaintiff any response to his "petition." *See*

*Ladeairous*, 592 F. App'x at 48. But he got one. On April 24, 2018 Sergeant Swetsky called

Plaintiff, presumably in response to the December 28, 2017 letter, to inform him that the City

found that Wunsch did nothing wrong by refusing to give Plaintiff his name and shield number,

since Plaintiff was able to obtain that information by looking at Wunsch's nameplate. (*Id.* ¶ 57.)

The CCRB also informed Plaintiff of the outcome of its investigation – a finding that Wunsch

acted discourteously and a recommendation that Wunsch receive a command level instruction.

(*Id.* ¶¶ 61, 63.)

### b) Plaintiff Pleads No Viable Fourteenth Amendment Claim

"To possess a federally protected property interest, a person must have a legitimate claim of entitlement to it." *Edelhertz v. City of Middletown*, 943 F. Supp. 2d 388, 394 (S.D.N.Y. 2012) (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)). A claim to property "does not arise from the Constitution, but rather from an independent source such as state or local law." *Id.* In order to have a property interest in something, a person must have more than "[a]n abstract need, desire or unilateral expectation" of it. *Id.* (internal quotation marks omitted) (quoting *Abramson v. Pataki*, 278 F.3d 93, 99 (2d Cir. 2002).

Plaintiff does not indicate what state or local law endows him with a property interest in knowing whether the NYPD agreed with and carried out the CCRB's non-binding recommendation. Therefore, there is no basis to sustain Plainitff's Fourteenth Amendment claim.

Because Plaintiff fails to plead a violation of the First or Fourteenth Amendments as they relate to his claims that he deserves to know the outcome of the CCRB referral, the Sixth and Seventh Causes of Action are dismissed.

### 4. The Motion to Dismiss the Fifth Cause of Action (Supervisory Liability Claim) is Granted

In the Fifth Cause of Action, Plaintiff seeks to recover for violations of the Fourth and Fourteenth Amendments under the theory that Byrne, through oversight actions "sanctioned" the conduct of Wunsch and Flores. (*See* Compl. ¶ 90.)

### a) Applicable Law

Supervisory liability under Section 1983 may be shown in the following ways:

(1) actual direct participation in the constitutional violation, (2) failure to remedy a wrong after being informed through a report or appeal, (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of

subordinates who committed a violation, or (5) failure to act on information
indicating that unconstitutional acts were occurring.

*Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (quoting *Hernandez v. Keane*, 341 F.3d
137, 145 (2d Cir. 2003)).  These categories were first articulated by the Second Circuit in *Colon
v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

      The doctrine of *respondeat superior* does not apply to supervisor liability alleged under
Section 1983.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).  "It is well settled that, in order to
establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show
. . . the defendant's personal involvement in the alleged constitutional deprivation." *Vasquez v.
Reilly*, No. 15-CV-9528 (KMK), 2017 WL 946306, at *11 (S.D.N.Y. Mar. 9, 2017) (internal
quotation marks omitted) (quoting *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir.
2013)).  "Because vicarious liability is inapplicable . . . a plaintiff must plead that each
[g]overnment-official defendant, through the official's own individual actions, has violated the
Constitution." *Iqbal*, 556 U.S. at 676.  Thus, a supervisor's "mere knowledge" of a
subordinate's constitutional violation does not amount to the supervisor's violating the
Constitution. *See id.*  However, if a supervisor is personally involved in developing an
unconstitutional policy or deliberately allowing an unconstitutional policy to continue, he or she
may be individually liable under Section 1983. *See Richardson*, 347 F.3d at 435.

### b)      Plaintiff's Assertion of Supervisory Liability is Conclusory

      The only surviving federal constitutional claim that potentially implicates the City and a
supervisor – specifically NYPD Deputy Commissioner for Legal Matters, Lawrence Byrne – is
the alleged taking of Plaintiff's pen by Wunsch.  Plaintiff alleges that Byrne "sanctioned"
Wunsch's conduct.  (Compl. ¶ 90.)  In support of this allegation, Plaintiff claims that (1) he
believes "Sergeant Swetsky acted for and on behalf of . . . Byrne and at his direction in

24

undertaking the investigation and coming to the conclusions that [Swetsky] did," (*id.* ¶ 59); (2) he believes that Byrne adopted Swetsky's conclusions, (*id.*); and (3) he believes that "Byrne sanctioned and adopted the unlawful conduct of . . . Wunsch . . . making it his conduct as their supervisor through the command structure" (*id.* ¶ 60).

However, "Conclusory accusations regarding a defendant's personal involvement in the alleged violation, standing alone, are not sufficient, and supervisors cannot be held liable based solely on the alleged misconduct of their subordinates." *Vasquez*, 2017 WL 946306, at *11 (internal quotation marks omitted) (quoting *Lindsey v. Butler*, 43 F. Supp. 3d 317, 329 (S.D.N.Y. 2014)).

Plaintiff's conclusory allegation that Byrne sanctioned Wunsch's conduct after it occurred fails to state a claim for supervisory liability. Because Plaintiff had no *constitutional* (as opposed to courtesy) right to be informed about how NYPD responded to his various complaints and referrals, any allegations against Swetsky relating to Plaintiff's First Amendment claim are out of the case.

Moreover, it is not sufficient to overcome the pleading standard laid out in *Twombly* and *Iqbal* to simply state that Plaintiff "believes" Swetsky was acting for Byrne in investigating Plaintiff's complaints. It is also insufficient, on a motion to dismiss, to state that Plaintiff "believes" that Byrne, through Swetsky's actions, sanctioned Wunsch's conduct. Plaintiff alleges no facts that support his beliefs that would transform his "beliefs" from merely possible to plausible. He thus does not adequately state personal involvement by Byrne.

Additionally, because "mere knowledge" is not enough for supervisory liability under Section 1983, *see Iqbal*, 556 U.S. at 676, the fact that Plaintiff made Byrne aware of the alleged

violations by sending him a letter and forwarding the subsequent CCRB complaint does not give rise to supervisory liability for Byrne.

Plaintiff does not allege that O'Neill participated in any way in the investigations into Plaintiff's complaints or that he sanctioned the behavior in question – let alone communicated with Byrne or any of the officers involved. (*See* Compl., *passim*.) In fact, he really alleges nothing at all against the Commissioner in relation to the actions of Wunsch and Flores. For that reason alone, the complaint, as against him, must be dismissed.

### 5. The Motion to Dismiss the Ninth Cause of Action (*Monell*) is Granted

Plaintiff claims that he is entitled to recover against the City of New York for the alleged "unlawful and wrongful conduct of its . . . employees . . . pursuant to the doctrine of *respondeat superior*." (Compl. ¶ 112.)

"In order to prevail on a claim against a municipality under section 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (citing *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690–91 (1978)). With respect to the "official policy" *Monell* element, a "municipal policy of some nature" must have caused a "constitutional tort." *Id.* (internal quotation marks omitted) (quoting *Monell* 436 U.S. at 691). Therefore, "a municipality may not be found liable simply because one of its employees committed a tort." *Id.* (internal quotation marks omitted) (quoting *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 405 (1997)); *see also Roe*, 542 F.3d at 36 (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986)).

Plaintiff has failed to establish that any action by a City employee resulted from a custom or policy of the City. He nowhere alleges facts that support a City policy, written or unwritten,

26

allowing officers to grab pens from lawyers attempting to serve process at One Police Plaza. Additionally, because municipalities cannot be held liable under the doctrine of *respondeat superior* with respect to § 1983 claims, *see Bishop*, 2010 WL 4159566, at *7, the mere fact that an NYPD officer may have committed a constitutional tort does not give rise to liability for the City.

This disposes of all of Plaintiff's federal claims. I now turn to his correlate state law/common law claims.

### C.    State Law Claims

Plaintiff brings parallel state law claims for (1) the alleged seizure of his pen, (2) the "force" he allegedly endured at the hands of the NYPD, and (3) the alleged "detention/restraint" to which he was subject. (*Id.* ¶¶ 80–82, 86–88.) Plaintiff also claims that, in addition to the individual actors, the City is also liable for these violations of New York law under the doctrine of *respondeat superior*. (*Id.* ¶¶ 104–06.)

The New York Constitution states, "The right of the people to be secure in their persons . . . and effects, against unreasonable . . . seizures, shall not be violated . . . ." N.Y. Const. art. I § 12. In *Brown v. State of New York*, 89 N.Y.2d 172 (1996), the Court of Appeals held that if a State actor violates the state constitution, a constitutional tort is committed, which gives rise to a private cause of action in tort against the State and the state actors. The Court of Appeals also held that no underlying enabling statute is required for an individual to bring a claim for damages based on a violation of the state constitution. *Id.* at 187.

However, the Court of Appeals described the constitutional tort action as a narrow remedy, to be used only when "necessary to effectuate the purposes of the State constitutional protections [that a] plaintiff invokes" or when "appropriate to ensure full realization of [a

plaintiff's] rights." *See Martinez v. City of Schenectady*, 97 N.Y.2d 78, 83 (2001). Where there

are alternative remedies available for the plaintiff, such as asserting a claim under state tort law

or a federal claim under § 1983, a state *constitutional tort* claim will not lie. *See Alwan v. City of*

*New York*, 311 F. Supp. 3d 570, 588 (E.D.N.Y. 2018) (emphasis added) (citing *Waxter v. State*,

33 A.D.3d 1180, 1181–82 (3d Dep't 2006); *Lyles v. State*, 2 A.D.3d 694, 695–96 (2d Dep't

2003)) (holding that a plaintiff cannot recover under a state *constitutional tort* action where an

alternate remedy exists under state tort law); *Wahad v. F.B.I.*, 994 F. Supp. 237, 240 (S.D.N.Y.

1998) (holding that a state constitutional action cannot lie when § 1983 provides an alternative

remedy for the plaintiff).

### 1. The Motion to Dismiss the Second Cause of Action is Granted in Part and Denied in Part

In the Second Cause of Action, Plaintiff seeks to recover for violations of the

Constitution and laws of New York under the theory that Wunsch seized his property – namely

his pen – "without legitimate governmental interest." (*See* Compl. ¶ 81.)

In addition to being actionable under § 1983 as an unconstitutional seizure of property,

*see supra* pp. 8–13, the taking of the pen also sounds in the New York common law tort of

conversion, which "occurs when one 'intentionally and without authority, assumes or exercises

control over personal property belonging to someone else, interfering with that person's right of

possession.'" *Demry v. Wind*, 82 A.D.3d 670, 671 (1st Dep't 2011) (quoting *Colavito v. N.Y.*

*Organ Donor Network, Inc.*, 8 N.Y.3d 43, 49–50 (2006)). To state a claim for conversion, the

plaintiff must have a possessory right or interest in the property and the defendant must have

interfered with or taken dominion over the property in derogation of the plaintiff's possessory

rights. *Petrone v. Davidoff Hutcher & Citron, LLP*, 150 A.D.3d 776, 777 (2d Dep't 2017). Of

particular relevance to the case at bar, returning the property to the plaintiff does not negate the

conversion because, "A claim for conversion will exist even where the deprivation is partial or temporary." *Slue v. N.Y. Univ. Med. Ctr.*, 409 F. Supp. 2d 349, 364 (S.D.N.Y. 2006) (citing *Pierpoint v. Farnum*, 234 A.D. 205, 209 (2d Dep't 1931)).

Plaintiff has adequately stated a claim for conversion against Wunsch. Plaintiff claims that he has a possessory right to his pen, and that Wunsch took dominion, albeit briefly, over the pen, which frustrated Plaintiff's interest in exclusive possession of his pen. The right that must be violated for a conversion action is not the right to use the property as intended – a right that was not infringed, since Plaintiff did not need the pen when it was taken away from him in order to obtain Wunsch's name and shield number – but rather, the right to possess the pen. Plaintiff clearly claims that he had a right to possess the pen; he says the pen belonged to him and claims that he had the pen in his possession. (*See* Compl. ¶ 40.)

But since Plaintiff states a claim for conversion, no state constitutional tort claim lies. To that extent, the Second Cause of Action must be dismissed.

### 2. The Motion to Dismiss the Fourth Cause of Action is Granted in Part and Denied in Part

In the Fourth Cause of Action, Plaintiff seeks to recover for violations of the New York State Constitution under two theories: wrongful detention/restraint and unreasonable force. (*See* Compl. ¶ 87.) As discussed above, no state constitutional tort lies if Plaintiff has a remedy for the same conduct under either § 1983 or state common law.

#### a) Plaintiff Pleads No Viable Wrongful Detention Claim Under Either the New York State Constitution or New York State Common Law

Plaintiff alleges that he was "subjected to unnecessary and . . . unreasonable detention/restraint . . . with respect to his removal from the One Police Plaza building lobby . . . in violation of the Plaintiff's rights under the laws and Constitution of the State of New York."

(Compl. ¶ 87.)  The first step in the analysis is to decide whether Plaintiff can avail himself of the state constitution, or whether some alternative remedy lies.

Because Plaintiff was not seized under the Fourth Amendment, *see supra* pp. 14–17, he has no alternative remedy for the personal seizure claim under § 1983.

But some common law tort might be implicated by Plaintiff's claim.  Defendants suggest that the closest state tort law analog to Plaintiff's constitutional seizure claim is false arrest.[2] The elements for a cause of action for false arrest are (1) "the defendant intended to confine the plaintiff," (2) "the plaintiff was conscious to the confinement and did not consent to the confinement," and (3) "the confinement was not otherwise privileged."  *D'Amico v. Correctional Medical Care, Inc.*, 120 A.D.3d 956, 961 (4th Dep't 2014).

However, Plaintiff has not come close to stating a claim for false arrest and does not argue that he has done so in his opposition brief.  (*See* Pl. Mem. Opp.)  As described *supra* p. 13, Plaintiff was not confined.  The opposite was true – Plaintiff was told to leave One Police Plaza and was leaving when Wunsch "unnecessarily walked" besides Plaintiff on his way out.  (*See* Compl. ¶¶ 51–52.)  Therefore, there is no alternative means of redress in state tort law.

But while neither federal nor common law give Plaintiff any relief, he nevertheless fails to state a claim that he was subject to an unconstitutional seizure under the New York Constitution.

"While the search and seizure provision of the State Constitution is similar to the wording of the Fourth Amendment and supports a policy of uniformity between State and Federal courts . . . [the] State provision, for reasons peculiar to New York, is subject to its own interpretation."

---

[2] Another possibility for an "unreasonable detention" analog is assault and/or battery.  However, Plaintiff does not allege that Wunsch touched or made any menacing gesture towards Plaintiff.  (*See* Compl. ¶ 52.)  Simply walking next to someone is not battery, and would not put a reasonable person in fear of an imminent battery, so it is also not assault (*see infra* pp. 33–35).

*People v. Bora*, 83 N.Y.2d 531, 534 (1994). New York's search and seizure provision has been interpreted to be broader than the Fourth Amendment. *See Landsman v. Village of Hancock*, 296 A.D.2d 728, 733 (3d Dep't 2002). Under New York law, a person is seized if "a reasonable person would have believed, under the circumstances, that the officer's conduct was a significant limitation on his or her freedom." *Bora*, 83 N.Y.2d at 536. "Typically the inquiry involves a consideration of all the facts and a weighing of their individual significance." *Id.* The Court of Appeals supplied example factors to consider, such as whether the officer's gun was drawn, whether the individual was prevented from moving, the number of verbal commands given, the tone of the commands, and the number of officers involved in the encounter. *See id.* The interruption required may result from the use of force but could also be the result of "submit[ting] to the authority of the badge." *Id.* at 534–35 (internal quotation marks omitted) (quoting *People v. Cantor*, 36 N.Y.2d 106, 111 (1975)).

Here, there was were no verbal commands to stop or to "freeze." Rather, Plaintiff alleges that he was told to leave the building (*see* Compl. ¶ 51) – which is the antithesis of a seizure. Furthermore, Plaintiff does not allege facts that plausibly suggest his liberty of movement was significantly interrupted. Plaintiff alleges that "Wunsch unnecessarily walked with Plaintiff as [he] was complying with . . . Flores' directive [to leave the building]." (Compl. ¶ 52.) Plaintiff's conclusory use of the word "unnecessary" does not alter the fact that Wunsch neither touched him nor threatened to do so. His allegation that the "escort" was "a custodial detention/restraint of the Plaintiff as the Plaintiff's liberty/freedom of movement was being unnecessarily and unreasonably constrained and restrained without a legitimate law enforcement justification . . . " (*id.*) – is purely conclusory, and so is insufficient to state a claim for a violation of Plaintiff's rights as guaranteed to him under the New York Constitution.

**b)** *Plaintiff Pleads Viable Claims for Assault and Battery under New York Common Law*

In addition to his seizure/detention claim, Plaintiff alleges that he was subjected to "unnecessary and . . . unreasonable force . . . in violation of the Plaintiff's rights under the laws and Constitution of the State of New York." (Compl. ¶ 87.) This claim stems from the allegations that "Wunch aggressively . . . [and] violently[] grabbed the Plaintiff's pen and wrenched it out of the Plaintiff's hand" (*id.* ¶ 40) and that "Flores angrily picked up [Plaintiff's] documents from the desk and he aggressively . . . [and] violently[] threw them at the Plaintiff, striking the Plaintiff and causing the documents to then fall to the floor next to the reception desk in the lobby at One Police Plaza" (*id.* ¶ 50).

Because Plaintiff fails to state a claim for excessive use of force under the United States Constitution, *see supra* pp. 17–21, Section 1983 provides no alternative remedy for Plaintiff's excessive force claim under the New York Constitution. However, the allegations against Flores and Wunsch do state New York common law tort claims of assault and battery. Therefore, while the Fourth Cause of Action must be dismissed insofar as it alleges a state Constitutional claim, *see Alwan*, 311 F. Supp. 3d at 588, it can go forward as a civil tort claim.

Under New York law, "A civil assault 'is an intentional placing of another person in fear of imminent harmful or offensive contact,'" whereas a "civil battery 'is an intentional wrongful physical contact with another person without consent.'" *Charkhy v. Altman*, 252 A.D.2d 413, 414 (1st Dep't 1998) (quoting *United Natl. Ins. v. Waterfront N.Y. Realty Corp.*, 994 F.2d 105, 108 (2d Cir. 1993)). Of course, police officers seeking to arrest or detain someone are entitled to use sufficient force they reasonably believe necessary to accomplish that law enforcement goal without being subject to civil assault and battery claims. *See Holland v. City of Poughkeepsie*, 90 A.D.3d 841, 846 (2d Dep't 2011). But because the facts pleaded by Plaintiff do not amount

to either arrest or detention, reasonableness inquiry is inapplicable. *See Johnson v. Suffolk Cty. Police Dept.*, 245 A.D.2d 340, 341 (2d Dep't 1997).

### (1) Plaintiff States a Claim for Battery Against Wunsch and Flores

One commits a civil battery when (1) there was bodily contact between the plaintiff and the defendant, (2) the contact was offensive, and (3) the defendant intended to make the contact without the plaintiff's consent. *Bastein v. Sotto*, 299 A.D.2d 432, 433 (2d Dep't 2002). The plaintiff need not allege an intent to harm, rather a plaintiff need only allege the act causing the bodily contact was done with the intent to make the contact, and the contact was offensive. *See Messina v. Matarasso*, 284 A.D.2d 32, 35–36 (1st Dep't 2001). The bodily contact need not be significant. *See Hawkins v. Kuhne*, 153 A.D. 216, 216–17 (2d Dep't 1912) (holding that the bodily contact necessary to photograph, measure, and fingerprint an inmate is sufficient to satisfy the bodily contact element of battery). The contact also may be direct or indirect – it is sufficient for a defendant to set in motion the force that causes the contact. *See De Santis v. Luger*, 257 N.Y. 476, 478 (1931) (holding that closing a door on the plaintiff could constitute a battery even though it was the door that made contact with the plaintiff rather than the defendant himself). "[M]aking contact with something connected with the plaintiff's person [also] suffices." *Waters v. Town Sports Intern. Holdings, Inc.*, No. 151760/14, 2014 WL 3765564, at *1 (N.Y. Sup. Ct. July 31, 2014); *see Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973) (emphasis added) (explaining that the constitutional protection afforded by the Eighth Amendment is not as extensive as the protection afforded by common law battery, "which makes actionable any intentional and unpermitted contact with the plaintiff's person *or anything attached to it and practically identified with it*").

33

With respect to Wunsch, Plaintiff adequately states a claim for battery. Plaintiff alleges that Wunsch forcefully grabbed Plaintiff's pen out of his hand without his consent. (*See* Compl. ¶ 40.) It is of no moment that Plaintiff does not allege that Wunsch actually touched his person; for the purposes of a battery claim, a pen in someone's hand can be considered connected or attached to the body of the person holding it. *See People v. Santiago*, 62 A.D.2d 572, 576 (2d Dep't 1978) (holding that snatching something from the hand of a person, while not constituting robbery, could constitute a battery). Thus, grabbing a pen out of Plaintiff's hand satisfies the bodily contact element of a battery claim.

Drawing all reasonable inferences in favor of the Plaintiff, it can be inferred that Wunch intended to grab the pen. It can also be inferred that this contact was offensive to the Plaintiff, considering that Plaintiff found it worthy to file suit over. Such contact would offend the reasonable person, as having a chattel forcefully taken from one's grasp is objectively offensive.

Plaintiff also states a claim for battery with respect to Flores. Plaintiff claims that Flores angrily threw the papers that Plaintiff had brought to serve at the Plaintiff, striking him in the chest. Again, drawing all reasonable inferences in favor of the Plaintiff, it can be reasonably inferred that Flores intended to throw the papers at the Plaintiff and to strike him with the papers. It can also be inferred that Plaintiff was offended by such contact. A reasonable person would also be offended by having papers thrown at him, thus intruding on his personal space – however miniscule the invasion may be.

### (2) Plaintiff States a Claim for Assault by Wunsch and Flores

One commits a civil assault if s/he intentionally acts in some way that places another in reasonable apprehension of imminent harmful or offensive contact – i.e., in reasonable apprehension of an imminent battery. *See Gould v. Rempel*, 99 A.D.3d 759, 760 (2d Dep't

2012). Mere words are not ordinarily enough, without some gesture accompanying them, to state a claim for assault. *See id.* Although physical contact is not an element of assault, *Brown v. Yaspan*, 256 A.D. 991, 991 (2d Dep't 1939), there must be some overt menacing act or gesture, *see Gould*, 99 A.D.3d at 760.

Plaintiff states a claim for assault with respect to Wunsch. Plaintiff alleges that Wunsch was angry when he grabbed Plaintiff's pen. (*See* Compl. ¶ 40.) It can be inferred that Wunsch intended to grab the pen. It can be inferred that Plaintiff was himself apprehensive about Wunsch's grabbing. An angry police officer reaching for a pen, about to wrench it out of one's hand, may be sufficient to make a reasonable person apprehensive of imminent offensive contact.

Plaintiff also states a claim for assault with respect to Flores. Plaintiff alleges that Flores angrily picked up his papers and threw them at him, striking Plaintiff with the papers. (*See* Compl. ¶ 50.) It can be inferred that Flores intended to throw the papers at Plaintiff. As was the case with Wunsch, it can be inferred that when Flores picked up the papers and started throwing them at the Plaintiff, Plaintiff was apprehensive about imminent offensive conduct, and that apprehension was reasonable.

### (3) Qualified Immunity

Although qualified immunity is generally understood to protect officials from liability under federal causes of action, "a similar doctrine exists under New York common-law." *Jenkins v. City of New York*, 478 F.3d 76, 88 (2d Cir. 2007). To be granted qualified immunity under New York law, "it must be established that it was objectively reasonable for the police officers involved to believe that their conduct was appropriate under the circumstances, or that officers of reasonable competence could disagree as to whether their conduct was proper." *Allen v. City of New York*, No. 03 Civ. 2829(KMW)(GWG), 2007 WL 24796, at *24 (S.D.N.Y. Jan. 3,

2007) (internal quotation marks omitted) (quoting *Brown v. State*, 12 Misc. 3d 633, 648 (N.Y. Ct. Cl. 2006)). "The only difference between the federal and state doctrines is that the reasonableness of an officer's action is judged with references to state law and the state, not the federal, constitution." *Bancroft v. City of Mount Vernon*, 672 F. Supp. 2d 391, 401 (S.D.N.Y. 2009) (citing *Allen*, 2007 WL 24796, at *24).

Plaintiff alleges that there was no reasonable law enforcement justification for the actions that form the basis of his surviving state law claims (*see* Compl. ¶¶ 1, 41) and Defendants do not argue that there were legitimate reasons for Wunsch and Flores to act in the manner alleged by Plaintiff (*see* Defs.' Mem. Supp.). Moreover, a reasonable officer in the circumstances alleged would not grab a pen out of someone's hand or throw papers at someone, even if, hypothetically, that person were giving them a hard time. Therefore, Wunsch and Flores are not entitled to qualified immunity for Plaintiff's surviving state law claims.

### 3. The City's Motion to Dismiss the Eighth Cause of Action is Granted in Part and Denied in Part

In the Eighth Cause of Action Plaintiff seeks to hold the city liable for the violations of the laws and Constitution of New York, as alleged in Counts Two and Four, under the doctrine of *respondeat superior*. (*See* Compl. ¶ 105.)

New York City "is liable for intentional torts . . . committed by its employees provided that the tort is committed within the scope of the [employees'] employment." *Green v. City of New York*, 465 F.3d 65, 86 (2d Cir. 2006) (citing *Carnegie v. J.P. Phillips, Inc.*, 28 A.D.3d 599, 600 (2d Dep't 2006)). With respect to claims that arise under New York law, the doctrine of *respondeat superior* applies to the City. *See Green*, 465 F.3d at 86. This differs from the *Monell* rule, which does not allow Section 1983 claims against municipalities under the doctrine of *respondeat superior*. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690–91 (1978).

With respect to Plaintiff's claim against the City for the alleged conversion, the City enjoys no immunity. The City does not argue that Wunsch was acting outside the scope of his employment when he took Plaintiff's pen. (*See* Defs.' Mem. Supp.) The only relevant consideration is whether the conduct alleged by Plaintiff meets the elements for conversion. *See Green*, 465 F.3d at 86 (holding that because the City did not argue that officers acted outside the scope of their employment, the court need only examine whether the alleged conduct falls within the definition of the intentional torts alleged). Therefore, the Eighth Cause of Action Cannot be dismissed.

The City also enjoys no immunity from Plaintiff's claim for the alleged assault and battery. The City does not argue that Wunsch and Flores were acting outside the scope of their employment when Wunsch allegedly grabbed Plaintiff's pen from his hand and Flores allegedly threw Plaintiff's papers at him. (*See* Defs.' Mem. Supp.) Thus, the only relevant consideration is whether the conduct alleged by Plaintiff meets the elements for assault and battery. *See Green*, 465 F.3d at 86. Because the Court holds that Plaintiff has stated a claim against Wunsch and Flores for assault and battery, the City can be held liable for those torts under the doctrine of *respondeat superior*.

However, to the extent that the Eighth Cause of Action alleges that the City is liable under the New York State Constitution – whether for unlawful detention (which has been dismissed on the merits) or for the claims as to which there is alternative common law redress available to Plaintiff, it must be dismissed

## IV. Summary of Rulings

A summary of my rulings is as follows:

Count One is not dismissed insofar as it states a claim against Defendant Wunsch for the unlawful seizure of Plaintiff's pen from his hand, which is alleged to violate the Fourth Amendment and Section 1983; it is otherwise dismissed with prejudice.

Count Two is not dismissed insofar as it states a claim against Defendant Wunsch for conversion under the common law of the State of New York; it is otherwise dismissed with prejudice.

Count Three is dismissed in its entirety and with prejudice.

Count Four is not dismissed insofar as it alleges the torts of assault and battery against Defendants Wunsch and Flores; it is otherwise dismissed with prejudice.

Count Five is dismissed in its entirety and with prejudice.

Count Six is dismissed in its entirety and with prejudice.

Count Seven is dismissed in its entirety and with prejudice.

Count Eight is not dismissed insofar as it alleges *respondeat superior* liability against the City of New York for the common law torts alleged against Wunsch and Flores in Counts Two and Four; it is otherwise dismissed with prejudice.

Count Nine is dismissed in its entirety and with prejudice.

The motion by Defendants Wunsch and Flores for a declaration that they are entitled to qualified immunity for the conduct that is actionable under Counts One, Two and Four is denied.

As a result of these rulings, the case is dismissed in its entirety and with prejudice against Defendants O'Neill and Byrne.

**Scheduling Order**

So what we have left is a case about whether Plaintiff is entitled to recover damages under federal and/or state law for the seizure of his pen (which was returned to him within

minutes of its being taken from him), and/or for having papers thrown at him by Flores. All other claims have been dismissed.

Fed. R. Civ. P. 1 provides that the civil rules are to be construed, administered and employed, by the court *and by the parties*, in a manner that promotes the just, speedy and inexpensive determination of cases.

As this is not a case in which the Court would charge punitive damages – that is apparent from the pleadings – any damages that might be awarded in the event Plaintiff prevails are likely to be negligible, and would be vastly exceeded by the cost of taking extensive discovery. Moreover, none is really needed. This is a "he said-he said" case; Plaintiff has more or less told his story in the complaint, and the officer defendants can easily enough tell their version on the witness stand.

In short, in order to dispose of this case expeditiously and at minimal cost, what the parties need is to go to trial as soon as possible.

Therefore, the court enters the following order: within sixty days of the date of this decision, each party must turn over to the other side all discovery required by Rule 26. By order of this court, such discovery includes (1) the name of every witness to the event alleged by Plaintiff and the name of every person within the NYPD who participated in any investigation thereof, together with (2) every single document, piece of paper, email or other electronic communication, memorandum, report or investigative note in its possession, custody or control concerning this incident and Plaintiff's subsequent complaint about it. For purposes of this order and this lawsuit, this applies to investigative notes of the NYPD, but not the CCRB, which is not a party to this case and which will not be added as a party to this case.

39

In order to effectuate Rule 1, no depositions, requests for production of documents or interrogatories will be allowed, as these methods of discovery would not promote the speedy or inexpensive resolution of this case. The court has already ordered the parties to turn over all documents that are relevant to the remaining claims. Counsel can ask all the relevant questions they want to the witnesses who are called at the trial of this action.

By October 30, 2019, each party shall turn over to the other side a list of all witnesses it intends to call at trial and all documents it intends to introduce. No party will be permitted to call any witness or to introduce any document that does not appear on said list. The court suspends its usual rule for the submission of a pre-trial order and there will be no final pre-trial conference.

From and after October 31, 2019, the parties are on 72 hours' notice for trial. When called for trial the parties must appear; there will be no adjournments.

## Conclusion

The Clerk of Court is respectfully directed to close Dkt. No. 27.

This constitutes the decision and order of the Court. It is a "written opinion."

Dated: August 5, 2019

_____
Chief Judge

BY ECF TO ALL PARTIES