**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JEFFREY ROTHMAN,

                 Plaintiff,

          -against-                     No. 19 Civ. 225 (CM)

THE CITY OF NEW YORK, *et al.*,

                 Defendants.

**OPINION AND ORDER ON MOTION FOR ATTORNEY'S FEES**

McMahon, C.J.:

Once upon a time, we urged people not to make too much of real but petty grievances by saying, "Don't make a federal case out of that."

This lawsuit was a violation of that principle writ large.

The plaintiff, James Rothman, is a civil rights lawyer. He arrived at One Police Plaza to serve a summons and complaint on December 13, 2018, after 4 PM, when the office for receipt of service was closed.  Rothman had every right to be treated with respect. He was instead treated rudely by the officer at the reception desk, Detective Andrew Wunsch. Wunsch refused either to accept service (which was not his responsibility) or to allow Rothman to go to the office where papers were supposed to be served, which was (said Wunsch) closed. Instead, he grabbed a pen, which Rothman was using to write down Wunsch's name and shield number, out of Rothman's hand. The Civilian Complaint Review Board ("CCRB") recommended that the NYPD discipline Wunsch for his discourteous behavior by issuing a command training instruction – a relative minor form of discipline, one commensurate with the offensive conduct.

1

Rothman also complained to the CCRB about the behavior of a second officer, Sergeant Vincent Florez, who came to Wunsch's desk to see what was happening between him and Rothman. Rothman alleged that Florez threw the papers Rothman was attempting to serve in his face. After investigation, the CCRB deemed this claim unfounded and recommended no discipline or sanction.

The full hearing he got at the CCRB was not enough for Rothman. He brought suit in this court pursuant to 42 U.S.C. § 1983 and various state tort laws, claiming that his pen was seized in violation of the United States and New York State constitutions, and that Wunsch assaulted and battered him and converted his property. Despite the CCRB's finding, Rothman also brought tort claims for assault and battery against Florez. And he brought claims against the two officers for unreasonable detention (thought he was not detained) and excessive force (though none was used). In his original pleading, he demanded compensatory and punitive damages, as well as declaratory and injunctive relief.

Rothman also sued two high-ranking police officials – then-Police Commissioner James O'Neill, and then-Deputy Commissioner for Legal Matters Lawrence Byrne – alleging that the former had a duty to keep Rothman apprised of the progress of the investigation into his complaints, and that the latter oversaw and approved of the actions of Wunsch and Florez. And Rothman sued the City of New York, alleging both *Monell* and *respondeat superior* liability (for the federal and state law claims, respectively).

On motion, this Court dismissed the all claim against O'Neill and Byrne, as well as many of the claims against Wunsch and Florez and the City. (Dkt. No. 37.) And at the earliest opportunity, the Court made it clear to Rothman – who sought only nominal compensatory damages, ostensibly on the ground that this case was about "princi*ple*," not "princi*pal*" (*see* Dkt.

No. 120 at 3) – that this lawsuit over a detective's rudeness was not the sort of case in which the issue of punitive damages would be submitted to the jury. (*See* Dkt. No. 37 at 39.)

This case, predictably, did not settle. So a jury was empaneled to assess Rothman's claims against Wunsch, Florez, and the City of New York.

The jury treated Rothman's allegations against Florez no differently than had the CCRB – it threw them out. (Dkt. No. 160.)

As to the claims against Wunsch, the jury concluded that Wunsch was technically liable to Rothman for the brief (literally moments) taking of his pen, which qualified as an unreasonable seizure under the Fourth Amendment, as well as battery and conversion (but not assault) under New York State law. The jury also concluded that the City, as Wunsch's employer, was technically liable to Rothman for Wunsch's state law violations under the doctrine of *respondeat superior*. (*Id.*) The jury awarded Rothman the $1 in nominal damages that he requested in his closing argument. (*Id.*) Despite Rothman's request that the Court charge punitive damages, it did not do so.

Now, proving that the case is not really about "principle" but about "principal," Rothman moves for an award, pursuant to 42 U.S.C. § 1988, of attorney's fees in the amount of $44,800, as well as $862.00 in costs incurred during the course of the litigation. (Dkt. No. 162.) Rothman's fee request is explicitly for only those fees incurred in connection with the trial; he seeks nothing for pre-trial work – very likely because he did much of it himself, making it non-compensable.

But a fee award even in the amount sought would be unreasonable. Rothman and his trial counsel will have to be content with "the moral satisfaction of knowing that a federal court concluded that [Rothman's] rights had been violated." *See Farrar v. Hobby*, 506 U.S. 103, 113 (1992).

3

The motion for an award of attorney's fees is granted to the same extent as the relief Rothman was awarded – he may have attorney's fees of $1, plus the costs to which a prevailing party is always entitled.

## DISCUSSION

In a Section 1983 action, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee." 42 U.S.C. § 1988(b). "[P]laintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1933) (internal quotation marks omitted).

Rothman is a prevailing party within the meaning of Section 1988. *Caruso v. Forslund*, 47 F.3d 27, 31 (2d Cir. 1995). The question is whether his $1 victory entitles him to an award of attorney's fees.

"[T]he most critical factor in a district court's determination of what constitutes reasonable attorney's fees in a given case 'is the degree of success obtained' by the plaintiff." *Barfield v. New York City Health and Hosps. Corp.*, 537 F.3d 132, 152 (2d Cir.2008) (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)). In fixing an award of attorney's fees in a civil rights action, a district court "is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought." *Farrar*, 506 U.S. at 114.

"[B]oth Supreme Court and Second Circuit precedent establish that attorney's fees and costs are usually not appropriate when a plaintiff recovers only nominal damages." *Feliciano v. Thomann*, 747 Fed. App'x 885, 888 (2d Cir. 2019) (citing *Pino v. Locascio*, 101 F.3d 235, 239 (2d Cir. 1996); *Farrar*, 506 U.S. at 113) (internal quotation marks omitted). As the Supreme Court explained:

> In a civil rights suit for damages . . . the awarding of nominal damages [] highlights the plaintiff's failure to prove actual, compensable injury. Whatever the constitutional basis for substantive liability, damages awarded in a § 1983 action must always be designed to compensate injuries caused by the constitutional deprivation. When a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, the only reasonable fee is usually no fee at all.

*Farrar*, 506 U.S. at 115 (internal citations and quotations omitted); *see also Pino v. Locascio*, 101 F.3d 235, 238 (2d Cir. 1996) ("[W]hile there is no *per se* rule that a plaintiff recovering nominal damages can never get a fee award, *Farrar* indicates that the award of fees in such a case will be rare.").

An award of attorney's fees where only nominal damages are awarded is thus appropriate only when there are other significant non-monetary indicia of success – often when the plaintiff has won significant equitable relief, or because the lawsuit confers some benefit on society. In *Cabrera v. Jakabovitz*, 24 F.3d 372 (2d Cir. 1994), for example, the Second Circuit affirmed the award of attorney's fees because the plaintiff had prevailed on a novel issue of law, alerting landlords that they could be held liable for discrimination if they employed real estate brokers who engaged in racial steering and thus achieving a significant public purpose. In *Husain v. Springer*, 579 Fed. App'x 3, 5 (2d Cir. 2014), the Circuit found that the plaintiff achieved a meaningful victory, nominal damages notwithstanding, because the defendant had voluntarily reversed the policy that formed the basis for the lawsuit. Moreover, plaintiff had only pursued nominal damages in the first place, which meant that plaintiff had achieved that which she had set out to accomplish when she filed the lawsuit.

By contrast, in *McCardle v. Haddad*, 131 F.3d 43 (2d Cir. 1997), the Circuit affirmed a fee award of only thirty-three cents to a plaintiff after a jury found the defendant liable for a Fourth

Amendment violation under Section 1983, but awarded her no compensatory or punitive[1]

damages. Although the plaintiff had testified that money was not a motivating factor in her

bringing suit, the court nonetheless found that she had not "receive[d] any other cognizable benefit

from [the] suit." *Id.*

Similarly, in *Caruso*, 47 F.3d at 32, the court upheld the denial of attorney's fees to a

Section 1983 plaintiff who sought an unspecified amount of compensatory damages in her

complaint and throughout the trial, but received only nominal damages from the jury. There too,

the court found that there were no "nonmonetary indicia of success." *Id.*

And in *Pino*, 101 F.3d 235, the Circuit reversed the district court's award of attorney's fees

to a Title VII plaintiff who sought $21 million in compensatory and punitive damages but won

only nominal damages after trial, reasoning that the litigation had given the plaintiff nothing more

than "the moral satisfaction of knowing that a federal court concluded that [her] rights had been

violated." (Quoting *Farrar*, 506 U.S. at 114.)

Rothman argues that this is the unusual case in which a victor who won no damages is

entitled to attorney's fees. He posits three reasons why this is so, none of which is persuasive.

*First*, Rothman argues that he achieved an adequate degree of success at trial, because he

was always clear that he was fighting this case as a matter of principle, and without any expectation

that he would be awarded any monetary relief. He contrasts his situation with those of the plaintiffs

in *Farrar* and *Pino*, both of whom were awarded nominal damages after seeking millions in

compensatory damages.

But Rothman mischaracterizes the record when he suggests that he never sought more than

nominal monetary relief. True, he demanded only "nominal compensatory damages" in his

---

[1] Just as I did, the district court in *McCardle* refused to give the jury a punitive damages charge.

complaint. (Dkt. No. 1 ¶ 27.) But Rothman also pursued his claim for punitive damages – which are reserved for conduct that is "extreme or outrageous" – from the filing of the complaint until his request to charge was disallowed at trial. Despite conceding that he suffered no compensable damage, he demanded "more than nominal" punitive damages in his complaint. (*Id.*) When, after becoming familiar with the facts alleged during litigation over the motion to dismiss, the court indicated that this was not a case in which punitive damages would be charged (Dkt. No. 37 at 39), Rothman filed a motion for reconsideration on that point. (Dkt. No. 39 at 12-13.) Despite the Court's refusal to reconsider, Rothman both submitted a proposed punitive damages charge and put a punitive damages question on his proposed verdict sheet. (Dkt. Nos. 149 at 20; 156.) He persists, in his fee award application, in believing that this was a case in which punitive damages could have been charged – even though the facts on which the verdict in his favor rests amount to nothing more than a momentary temper tantrum on the part of Detective Wunsch.

In short, Rothman, like the plaintiffs in *Farrar* and *Pino*, unsuccessfully pursued non-trivial monetary relief, but obtained none. That he did so by pressing for an award of *punitive* rather than *compensatory* damages does not make his circumstances more favorable for obtaining a few award. If anything, it makes them less so.

Rothman also insisted on pursuing a claim for declaratory and injunctive relief against the City and Defendants Byrne and O'Neill, even though no reasonable attorney with his considerable experience in the civil rights field could possibly have thought that the one-off set of facts he presented to the jury – facts that added up to discourtesy on the part of a single officer, as the CCRB concluded – would entitle him to such relief. He continued to press for some form of nonmonetary relief during settlement talks and advised the Court that he planned to ask for equitable relief should the jury return a verdict in his favor. (Dkt. No. 158 at 31:7-17.) He never

made such a request of the court; had he done so, it would have been summarily denied. So Rothman enjoyed no success there, either.

Finally, (1) all of Rothman's claims against Defendants O'Neill and Byrne, (2) his claims for unreasonable detention and excessive force against Wunsch and Florez, and (3) his First Amendment, Fourteenth Amendment, and *Monell* claims against the City, were dismissed on motion, while his claims against Florez were thrown out by the jury. All this demonstrates the lack of merit to most of his lawsuit and the lack of success that he achieved compared to what he sought.

To support his claim of success, Rothman erroneously relies on an old case of mine, *Lee v. McCue*, No. 04-civ-6077 (CM), 2007 WL 2230100, at *7-8 (S.D.N.Y. July 25, 2007). *Lee* was a false arrest case in which I awarded the plaintiff $35,000 in fees, even though the jury only awarded him nominal damages. I did so because, in addition to achieving victory on a constitutional claim far more significant than Rothman's, the plaintiff's attorney had to spend considerable effort defending against patently meritless pre-trial motions. *Id.* Suffice it to say that pre-trial motions that resulted in the dismissal of claims and named defendants as outlined above cannot be characterized as "patently meritless."

In sum, Rothman did not achieve a "meaningful" victory. He failed to obtain more than "strictly nominal relief," and he pressed a great many claims that he lost outright – including claims for punitive damages, in which he manifestly sought "principal," not simply the vindication of "principle." Rothman may not have demanded compensatory damages in the millions, as did the plaintiffs in *Farrar* and *Pino*, but in no way did he come close to achieving the "quantity and quality of relief" that he set out to obtain when he brought this action – while consuming court time and resources that would have been better utilized in the service of litigants who had far more

8

serious claims to pursue.  *See Barfield*, 537 F.3d at 152 (quoting *Carroll v. Blinken*, 105 F.3d 79, 81 (2d Cir. 1997)).  It would, therefore, be unreasonable to compensate his trial attorney in the amount requested.

*Second*, Rothman argues that the City should have to pay attorney's fees because the City made this a "no pay" case from the beginning. I gather that he is suggesting that the City negotiated in bad faith, thereby necessitating a trial.

Since Rothman has chosen to open up the issue of good faith in settlement negotiations, I will discuss it.

It is hardly surprising that the City made this a "no pay" case, given both the nature of the incident that gave rise to the lawsuit and the positions that Rothman took during pre-trial settlement negotiations. After the court declined to dismiss the action, Rothman demanded payment of a six-figure sum for 165 hours of attorney's fees. This included hours he himself logged (Dkt. 164-1 ¶ 81) – hours for which he could never have recovered on a fee award motion, since the law is crystal clear that a lawyer cannot recover attorney's fees for work performed on his own case. *Kay v. Ehrler*, 499 U.S. 432 (1991).[2]  Although Rothman reduced this demand in subsequent negotiations, his offers never dipped below five figures.  (Dkt. No. 164-1 ¶ 122.) Such sums are simply not commensurate with (1) Rothman's admission in his complaint that he suffered absolutely no damage, and (2) the Court's signal – delivered early in the (vain) hope of precipitating a quick settlement – that Rothman's claim for punitive damages would not be sent to the jury.  After *Farrar*, the possibility of a fee award after trial does not increase the settlement value of a case in which there are no damages. *See Haywood v. Koehler*, 885 F. Supp. 624, 629

---

[2] I find it telling that Rothman's motion seeks recovery only for the work that Mr. Meyerson did in connection with the trial in this case, even though Meyerson's name appears on all of the pre-trial papers. The Court has long suspected that Mr. Rothman did much of his own legal work; the fact that he does not seek to recover for any pre-trial work done by Mr. Meyerson would appear to confirm my surmise.

(S.D.N.Y. 1995) ("Cases should be settled within the confines of the remedies that the law provides. A case in which $1 of nominal damages is properly awarded should not have a settlement value far in excess of $1 due to the threat of attorney's fees when the Supreme Court has instructed that in such situations 'the only reasonable fee is usually no fee at all.'") (quoting *Farrar* 506 U.S. at 103). The City had no obligation to put money on the table in order to avoid a trial; nor could I conclude that the City was negotiating in bad faith when it refused to do so.[3]

*Third*, in his reply brief, Rothman argues that civil rights litigation can never be "incidental to the public interest or tangential to the collective community's interest." (Dkt. No. 170 at 2.) But that is simply not so. The "public interest exception" to the general rule set forth in *Farrar* "applies not to every discrimination case, but only to those in which prevailing plaintiffs establish 'ground-breaking conclusions of law.'" *McGrath v. Toys "R" Us, Inc.*, 356 F.3d 246, 252 (2d Cir. 2004). Rothman's verdict announced no such ground-breaking conclusion of law; his case required only the application of well-established law to a simple set of facts. *See Alvarez v. City of New York*, No. 11-CV-5464 (JPO), 2017 WL 6033425, at *4 (S.D.N.Y. Dec. 5, 2017); *Haywood*, 885 F. Supp. at 629.

Moreover, if Rothman were correct that civil rights cases like this one can never be "incidental to the public interest," then the "no damages–no fee" cases discussed above would not exist. Most of those cases were, like Rothman's lawsuit, brought under Section 1983. And while *Pino* was brought under Title VII, the court in that case reaffirmed the principle that controls here by observing, "The vast majority of civil rights litigation does not result in ground-breaking

---

[3] Both parties refer in their briefs to the court's pre-trial comment about the lack of a Rule 68 Offer of Judgment from the City. It would have been interesting to see how Rothman would have responded to such an offer in an extremely low amount – say, $2,500, inclusive of costs and fees. But while this court believes that Rule 68 is an underutilized tool in the resolution of cases such as this one, the City – believing that the case lacked merit – had no obligation to make such an offer, especially as attorney's fees were really the only amount at issue.

conclusions of law, and therefore, will only be appropriate candidates for fee awards if a plaintiff recovers some significant measure of damages or other meaningful relief." 101 F.3d at 239.  This case, obviously, qualifies as a "civil rights" litigation; and the defendant received neither a significant measure of damages nor any other meaningful relief – aside from the satisfaction of prevailing on some of his claims against Detective Wunsch.

While the verdict against Detective Wunsch may be personally meaningful to Rothman, it is not a verdict that is likely to be of great significance to the public at large. *Cf. Le-Blanc-Sternberg v. Fletcher*, 143 F.3d 748, 759-60 (2d Cir. 1998). The facts of this case that gave rise to the verdict – a pen seized by a police officer in a fit of pique, then returned within moments to its rightful owner – are just too trivial. Rothman's verdict is entirely symbolic, and so does not support the award of attorney's fees he seeks.

For these reasons, Rothman's motion for an award of $44,800 in attorney's fees is denied. The court awards him $1 in attorney's fees – which, in the circumstances, is a reasonable award – plus his costs of $862.00. The Clerk shall enter judgment accordingly, remove the motion at Docket #162 from the Court's list of open motions, and close this case.

This is a "written decision."

Dated: November 30, 2020
         New York, New York

_____
                        Chief Judge

BY ECF TO ALL COUNSEL